UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| RANDI-LYN D., ) | |
| ) | |
|        *Plaintiff* ) | |
| ) | |
| v. ) | No. 1:20-cv-00370-JAW |
| ) | |
| KILOLO KIJAKAZI, ) | |
| *Acting Commissioner of Social Security*,[1] ) | |
| ) | |
|        *Defendant* ) | |

**REPORT AND RECOMMENDED DECISION**[2]

This Supplemental Security Income (SSI) appeal raises the question of whether the administrative law judge (ALJ) supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ erred in assessing her mental residual functional capacity (RFC) and in discounting a post-hearing vocational affidavit. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 13) at 5-16.[3] I conclude that the ALJ rejected the plaintiff's post-hearing vocational affidavit on an improper basis and, accordingly, recommend that the court vacate the commissioner's decision and remand this case for further proceedings consistent herewith. I need not and do not reach the plaintiff's argument that the ALJ erred in assessing her mental RFC.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted as the defendant in this matter.
[2] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.
[3] At oral argument, the plaintiff's counsel withdrew the second of three points of error, *see* Statement of Errors at 9-11, conceding that the ALJ complied with the Appeals Council's remand order.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff had the severe impairments of asthma, right shoulder disorder status post-surgery, depression, anxiety, and post-traumatic stress disorder (PTSD), Finding 2, *id*. at 17; that she had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 416.967(b), with additional limitations not relevant here, Finding 4, *id*. at 21; that, considering her age (37 years old, defined as a younger individual, on the date her application was protectively filed, August 26, 2015), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 6-9, *id*. at 27; and that she, therefore, had not been disabled from August 26, 2015, the date her application was protectively filed, through the date of the decision, October 30, 2019, Finding 10, *id*. at 28.  The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than any past relevant work.  20 C.F.R. § 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987);

*Goodermote*, 690 F.2d at 7.  The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work.  *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I.  Discussion

### A.  Background

The vocational expert (VE) present at the plaintiff's hearing testified that a hypothetical individual with the RFC ultimately found by the ALJ could perform the jobs of hand packager, *Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed., rev. 1991) (*DOT*) § 920.687-082, with 190,000 jobs in the national economy, bench assembler, *DOT* § 706.684-042, with 90,000 jobs in the national economy, and inspector, *DOT* § 712.684-050, with 260,000 jobs in the national economy.  *Compare* Finding 4, Record at 21 *with id*. at 55-57; *see also DOT* §§ 706.684-042, 712.684-050, 920.687-082.  On cross-examination, the plaintiff's counsel asked the VE to "describe how you generate your estimates of job numbers[.]"  Record at 59.  She testified:

> Yes, I start with published numbers from the Bureau of Labor Statistics.  Those numbers are published for occupational groups.  I then have to break down those groups by the type of job and the . . . skill and exertional level based on my knowledge of how those jobs are performed in the national economy.

*Id*. at 59-60.  The plaintiff's counsel inquired:

> And then what do you do . . . with that information once you've broken down those . . . groups?  In other words, how do you get from there to estimates of . . . numbers for specific occupations?  Specific *DOT* codes, I should say.

*Id*. at 60.  The VE responded:

> Well, I . . . have to . . . start by looking at the numbers of job titles within a particular occupational group, have to break – have to estimate the frequency of those numbers, and then for each of those jobs, I have to estimate how many of those jobs actually fall within the . . . normal exertional level for that occupation.

*Id*.

3

Post-hearing, the plaintiff's counsel submitted an affidavit of David W. Meuse, MS, CRC, in which Meuse noted that the jobs of hand packager and bench assembler are both included in Occupational Employment Statistics (OES) group 51-9199, which encompasses a total of 1,526 individual occupations.  *Id.* at 499-500, ¶¶ 10-12.  He stated that the Bureau of Labor Statistics (BLS) reported in 2018 that the entire OES group accounted for 230,760 jobs, as a result of which the VE's "estimates of the incidence of only two of those 1,526 occupations – 280,000 jobs – exceeds the number of jobs in the whole group."  *Id*. at 500, ¶ 12.

Meuse added that the job of inspector is found in OES group 51-9061, which BLS has reported includes 782 individual occupations accounting for a total of 557,570 jobs.  *Id*. at 500, ¶ 13.  He characterized the VE's testimony that one of those occupations, that of inspector, accounted for 260,000 jobs – slightly less than half of the total for the entire group – as "simply not reasonable[.]"  *Id*.

The ALJ relied on the testimony of the VE to find at Step 5 that the plaintiff remained capable of performing jobs existing in significant numbers in the national economy.  *See id*. at 27-28.  He addressed the Meuse affidavit as follows:

> The undersigned notes that *after the hearing* the [plaintiff]'s attorney solicited and has submitted an affidavit from another VE[,] David Meuse[,] contesting the reliability of the [VE]'s testimony, including the credibility of the job incidence numbers given (Exhibit B21E 6/6/2019).  The undersigned overrules this objection.  The [VE] who testified at hearing has extensive professional knowledge and experience in job placement.  Her testimony is found to be reliable.  The [plaintiff]'s attorney had ample opportunity to further develop this at hearing, but failed to ask any such questions – instead, submitting information from another vocational source whose credentials, background, and knowledge have not been verified on the record as well as after-the-fact/after hearing with no opportunity to be questioned by the undersigned.

*Id*. at 28 (emphasis in original).

## B. Analysis

The plaintiff argues that "[t]he ALJ's reasons for dismissing the Meuse affidavit without discussing its substance do not bear scrutiny[,]" Statement of Errors at 13, likening this case to *Santiago v. Saul*, Civil No. 1:20-cv-10266-LTS (D. Mass. Jan. 20, 2021) (miscited in her statement of errors as "*Rodriguez v. Saul*"), and *Pate v. Saul*, Civil Action No. 19-cv-11594-PBS, 2020 WL 3105075 (D. Mass. June 11, 2020), *see id*. at 13-15.[4]

The commissioner counters that "the ALJ recognized, addressed, and appropriately resolved" the conflict in vocational evidence, Opposition at 10, as did ALJs who discounted post-hearing Meuse evidence in *Brett J. v. Saul*, No. 1:19-cv-00270-DBH, 2020 WL 3567155 (D. Me. June 30, 2020) (rec. dec., *aff'd* Aug. 17, 2020), and *Zaragoza v. Saul*, 474 F. Supp. 3d 378 (D. Mass. 2020), *see id*. at 10-14.

The plaintiff has the better argument.

At bottom, the ALJ rejected the Meuse affidavit on the basis that it was rebuttal evidence – that is, evidence submitted post-hearing and authored by someone whose conclusions were not subject to verification on the record or to cross-examination. However, an ALJ "cannot categorically refuse a request to consider evidence simply because it is submitted after the hearing has concluded[,] . . . especially . . . when post-hearing evidence is offered in response to VE testimony." *Patrick S. v. Saul*, Civil No. 1:18-cv-289-DBH, 2019 WL 3814283, at *3 (D. Me. Aug. 14, 2019) (citation and internal quotation marks omitted).

Similar rejections of post-hearing Meuse affidavits were held deficient in *Santiago* and *Pate*. The ALJ in *Santiago* explained:

> [F]ollowing the hearing, the claimant representative submitted an affidavit from a different vocational source disputing the claimant's ability to perform the noted

---

[4] The commissioner helpfully attached a copy of *Santiago*, which is unpublished, to her brief. *See* Defendant's Opposition to Plaintiff's Itemized Statement of Errors ("Opposition") (ECF No. 15) at Page ID ## 1152-63.

> positions within the confines of the residual functional capacity. During the hearing, the claimant's representative did not object to the qualifications of the [VE] utilized at the hearing, [and] the fact that a second vocational source may disagree with the [VE] utilized at the hearing does not require a finding that the [VE]'s testimony is flawed. The representative had a full opportunity to question the [VE] at the hearing and did so extensively.

*Santiago*, slip op. at 9-10 (citation and internal quotation marks omitted). The *Santiago* court deemed that handling of the Meuse affidavit inadequate, explaining: "Although [the ALJ] did acknowledge the existence of the post-hearing affidavit, he failed to discuss Meuse's evidence – or even to reference its substance – in a way that would support the conclusion that he considered and discredited it." *Id*. at 10. In so finding, the court described the ALJ's discussion as "akin to the one Judge Saris considered in Pate and differ[ing] meaningfully from the one Judge Gorton reviewed in Zaragoza." *Id*.

In a similar vein, the ALJ in *Pate* had deemed a post-hearing Meuse affidavit unpersuasive on the basis that, whereas "the claimant's [VE] was retained for the purpose of supporting a claim for disability and he was not present at hearing and subject to examination[,]" the VE who testified at hearing "was certified as an expert by the SSA [Social Security Administration] and relied on his experience and skill to provide job numbers based on sources he had determined to be reliable." *Pate*, 2020 WL 3105075, at *6 (citations and internal punctuation omitted).

The *Pate* court held that explanation deficient, observing that the ALJ both failed to address Meuse's "serious challenges to the VE's testimony" and relied on the fact that Meuse was retained by the claimant, which, in view of claimants' "right to submit rebuttal evidence after a hearing[,]" was not an "explanation that a reasonable mind might accept as adequate to support rejection of the Meuse affidavit." *Id.* at *10 (citation and internal quotation marks omitted). The same is true here.

By contrast, the ALJ in *Zaragoza* "discussed [Meuse's] findings before rejecting them in favor of [those of the testifying VE][,]" *Zaragoza*, 474 F. Supp. 3d at 384, as did the ALJ in *Brett J.*, who observed:

> The undersigned is not persuaded by Mr. Meuse's affidavit, as he inaccurately stated that [the VE]'s numbers were based on the [BLS], whereas [the VE] described that he was also relying on his experience and training. While Mr. Meuse may not agree with [the VE] as to whether those jobs have changed over time, [the VE] compellingly testified that he was basing his findings on his 40 years[] of experience and personal monitoring of the cited jobs.

*Brett J.*, 2020 WL 3567155, at *2.[5]

The ALJ's rejection of the Meuse affidavit on the improper basis of its status as post-hearing rebuttal evidence renders his Step 5 finding unsupported by substantial evidence, warranting reversal and remand. *Cf. Rebecca B. v. Saul*, No. 2:20-cv-00154-JDL, 2021 WL 1565402, at *2, 4 (D. Me. Apr. 21, 2021) (rec. dec., *aff'd* May 18, 2021) (reversal and remand warranted when, *inter alia*, ALJ rejected post-hearing Meuse evidence concerning claimant's need for bariatric chair on an erroneous basis).

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **VACATED** and the case **REMANDED** for proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum,*

---

[5] During oral argument, the commissioner's counsel also cited *Brendon B. v. Saul*, No. 1:20-cv-00123-JDL, 2021 WL 1922935 (D. Me. May 12, 2021) (rec. dec., *aff'd* July 29, 2021). *Brendon B.* likewise is distinguishable. In that case, the ALJ summarized Meuse's challenge to the VE's testimony and explained why he had chosen to credit the testimony of the VE over the Meuse evidence. *See Brendon B.*, 2021 WL 1922935, at *3.

*within fourteen (14) days after being served with a copy thereof.   A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.*

Dated this 31st day of October, 2021.

<u>/s/ John H. Rich III</u>
John H. Rich III
United States Magistrate Judge
